873 A.2d 452

**SALISBURY BUILDING SUPPLY COMPANY INC.**

v.

**KRAUSE MARINE TOWING CORPORATION.**

**No. 21, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

May 2, 2005.

Randolph C. Baker (Jeffrey N. Pritzker,on brief), Towson, for appellant.

Harry S. Shapiro, Jacksonville, for appellee.

Panel ADKINS, MEREDITH, WENNER, WILLIAM W., (Retired, Specially Assigned) JJ.

MEREDITH, J.

The issue to be decided in this case is whether a memorandum sufficient to satisfy the statute of frauds can consist of a document signed by the defendant prior to the formation of the alleged contract. The plaintiff below, Krause Marine Towing Corporation ("Towing Corp."), appellee, sued Salisbury Building Supply Company, Inc. ("Supply Co."), appellant, in the circuit court for Baltimore County, alleging breach of a contract that was to be performed over a five year term. Prior to the point in time that Towing Corp. had filed its articles of incorporation with the State Department of Assessments and Taxation, Supply Co. and the principal for Towing Corp. signed a document that purported to reflect an agreement for Towing Corp. to haul building materials for Supply Co. over a five year period.

At trial, Towing Corp. argued that, after it was incorporated, the parties entered into a subsequent oral contract upon the same terms as the written contract signed by Supply Co. before Towing Corp. was in existence. The trial judge ruled that the writing executed prior to the plaintiff's incorporation could satisfy the applicable statute of frauds. Upon the jury's finding that Towing Corp. and Supply Co. had entered into an oral contract by adopting the terms of the previously executed written agreement, the court entered judgment for the plaintiff. After the circuit court denied the defendant's motion for judgment notwithstanding the verdict, Supply Co. appealed. We shall affirm the judgment of the circuit court.

### Background

Since 1971, Joseph Krause has been a tugboat captain. In May of 1989, he began to explore opening his own towing company. He approached Ronald Alessi, the President of Supply Co., about the possibility of hauling quarry stone for that company from quarries in Havre De Grace and Goose Bay to Supply Co.'s Salisbury plant.[1] On May 12, 1989,

---

1. In 1989, the appellant's corporate name was Pocohantas, Inc. By articles of amendment filed May 1, 1991, the appellant's name was

Krause and Alessi signed a document that purported to be an agreement between Towing Corp. and Supply Co. Alessi signed the agreement as President of Supply Co., and, notwithstanding the fact that Krause had not yet formed a corporation, Krause signed the agreement as President of Towing Corp.

After signing the document dated May 12, 1989, Krause prepared and filed articles of incorporation for Towing Corp. The articles were accepted by the State Department on July 11, 1989. Krause also arranged for financing and for Towing Corp. to purchase the tugboat and barge that were needed to perform the agreed hauling services for Supply Co.

In August of 1989, Towing Corp. began transporting stone materials by barge from various quarries to Supply Co.'s Salisbury plant. For approximately two years, both companies conducted business with each other in accordance with the terms of the document signed on May 12, 1989. In May of 1991, Supply Co. transferred substantially all of its assets to a company named Pocohantas Concrete, Inc. Soon after the change in ownership of the Salisbury plant, the new owners declined to continue to utilize the services of Towing Corp. upon the terms reflected in the May 12, 1989, document, and Supply Co. made no further use of Towing Corp.'s services. As a consequence of Supply Co.'s failure to utilize Towing Corp.'s services for the full five years contemplated by the 1989 agreement, Towing Corp. suffered lost profits in the amount of $165,965, according to the unchallenged testimony of an accountant who testified as an expert witness for the plaintiff.

At the close of the plaintiff's case, Supply Co. moved for judgment in its favor, arguing that the written agreement in evidence could not be enforced because it was executed at a time when the plaintiff corporation was not yet in existence. When the trial judge pointed out that the jury might be able

changed to Salisbury Building Supply Co., Inc. Because the name change is not material to the issues on appeal, we shall refer to the appellant as Supply Co. throughout.

to conclude from the evidence that the parties had orally entered into a contract on the same terms as the May 12, 1989, document, Supply Co. objected that the enforcement of such an oral agreement would be barred by the statute of frauds. The trial judge reserved ruling on the defendant's motion for judgment, and the defense rested without offering any further evidence.

The trial judge instructed the jury as follows with regard to the alleged contract:

Now, the next thing I need to tell you is when this contract in May of 1989 was entered between Krause Marine Towing Corporation, that corporation's charter had not been accepted by the Department of Assessments and Taxation. For you and I, until we go to the hospital and we are born, we are not alive. Until a corporation receives a piece of paper once they file it with the Department of Assessments and Taxation, they are not alive. So that corporation wasn't born. . . . So this written contract is meaningless. It was executed by somebody that was not yet born.

The Plaintiff's contention in this case is that . . . the parties by their conduct ratified and accepted the contract because [Towing Corp.] was born July 11, 1989[,] and after that, you have heard the Plaintiff's testimony, that they dealt together.

So the Plaintiff says, ["]look, I understand it wasn't a written contract, but . . . we were born July 11th and the testimony in this case will show that from July 11th, at least for two and a half years, we both operated verbally under an oral contract and accepted it.["]

I'm going to tell you if you believe that is what happened, you can say, ["]yeah, there was a contract.["] The Defendant has a few things he wants to say about that and you may not find there is a contract.

The case was submitted to the jury on issues pursuant to Maryland Rule 2–522(c). Issue No. 1 asked the jury: "Did the Plaintiff and Defendant contract by adopting the terms of the May, 1989 written agreement between [Towing Corp.] and

[Supply Co.]? No. Yes." The jury answered in the affirmative. Issue No. 2 asked the jury: "If you determine there was an agreement between the parties, did the Defendant breach that agreement? No. Yes." The jury again answered in the affirmative. Finally, Issue No. 3 asked the jury: "If you determine the Defendant breached the contract, what damages, if any, do you award the Plaintiff to be paid by the Defendant?" The jury responded: "165,965.00." In accordance with the jury's responses, the court directed that judgment be entered in favor of Towing Corp. against Supply Co. in the amount of $165,965.00.

The defendant promptly filed a motion for judgment notwithstanding the verdict, pursuant to Maryland Rule 2–532. In that motion, Supply Co. again asserted that enforcement of the alleged oral contract for five years of services was barred by the statute of frauds, more specifically, Md.Code (2001, 2002 Repl. Vol.), Courts & Judicial Proceedings Article ("C.J."), § 5–901(3), which provides:

> Unless a contract or agreement upon which an action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or another person lawfully authorized by that party, an action may not be brought:
>
> . . .
>
> (3) On any agreement that is not to be performed within 1 year from the making of the agreement.

The trial judge denied the defendant's post-judgment motion. In a written opinion the court explained its reasoning:

> This court finds that in this particular case, there was a memorandum or note of an existing contract, adopted by reference, in writing and signed by [Supply Co.] so as to allow it to be charged with a breach of contract. . . .
>
> Following a course of dealing between the parties, a written contract was executed between parties dated May 12, 1989 which mirrored the verbal contract later reached between "the" parties to this litigation upon which the

litigation in this case was based. That first contract was null and void because one of the parties was a corporate entity which did not exist at the time it was executed. What the parties envisioned with that first contract was the formation of a 5 year contract which would have allowed [Towing Corp.] to recover the costs of the purchase of equipment it was going to have to make in order to perform the contract for [Supply Co.]. Time passed and the parties began operating in accord with what Krause testified to as the understanding between the parties. That is what the jury believed; the jury had the documents in front of them; the jury knew the specific facts of the dealings between the parties.

Thus, this court concludes that there was indeed a writing setting forth the specific terms of the parties, including an agreement to operate within that contract for a 5 year period of time. That writing was adopted by reference to the verbal contract under which [Towing Corp.] and [Supply Co.] eventually started operating. Testimony was clear as to why the 5 year period was agreed to. In the opinion of the undersigned judge, that writing adopted by reference satisfied the statute of frauds under the facts and circumstances of this particular case. (Footnotes omitted.)

In this timely appeal, Supply Co. presents one question for our consideration:

Whether a written contract requiring performance for a period of more than one year that is legally invalid and unenforceable is a sufficient "writing" to comply with the Statute of Frauds by virtue of the parties['] subsequent part performance in accordance with the invalid and unenforceable written contract.

### Discussion

■ Under the Maryland statute of frauds, a contract that cannot be performed within one year is not enforceable unless the agreement "or some memorandum or note of it, is in writing and signed by the party to be charged." C.J. § 5–

901(3); *see General Federal Construction, Inc. v. James A. Federline, Inc.*, 283 Md. 691, 693, 393 A.2d 188 (1978). Pursuant to Rule 2–522(c), the trial judge reserved to himself the question of whether the document signed by Supply Co. prior to the time Towing Corp. established its existence as a legal entity could satisfy the statute's requirement of a writing. Because this issue was decided by the court as a matter of law, we review the ruling *de novo.*

■ Supply Co. has not argued that the document that its president signed on May 12, 1989, omitted any material terms of the alleged agreement. Rather, Supply Co. contends that it could not have entered into any contract with Towing Corp. prior to July 11, 1989, the date Towing Corp.'s articles of incorporation were accepted by the State Department of Assessments and Taxation. Although the jury found that the parties had entered into an oral contract, if the law requires the memorandum of a multi-year agreement to be signed on or after the date of the alleged oral agreement, Supply Co. would be correct in its assertion that the May 12, 1989, document could not satisfy the statute's requirement of a writing. However, the authorities agree that the signing of the memorandum may predate the formation of the contract.

Section 136 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) states: "A memorandum sufficient to satisfy the Statute [of Frauds] may be made or signed at any time before or after the formation of the contract." Comment *a* to § 136 reiterates: "[A] memorandum or signature made before the formation of the contract may be adopted thereafter."

Similar statements are found in E. ALLAN FARNSWORTH, 2 FARNSWORTH ON CONTRACTS § 6.7 at 155 (3rd ed. 2004)("The memorandum may be made before or after the formation of the contract."); CAROLINE N. BROWN, 4 CORBIN ON CONTRACTS § 22.8 at 738 (Rev. ed.1997) (the writing "may be made as a part of the process of the agreement"); and RICHARD A. LORD, 10 WILLISTON ON CONTRACTS § 29.3 at 432 (4th ed.1999) ("a note or memorandum may generally be made at any time"). *Accord Farrow v. Cahill*, 663 F.2d 201, 209 (D.C.Cir.1980) ("It is

well settled that a memorandum satisfying the Statute [of Frauds] may be made before the contract is concluded.").

WILLISTON ON CONTRACTS emphasizes that, in analyzing whether a memorandum or note is sufficient to satisfy the statute of frauds, courts should focus upon the statute's purpose, namely, prevention of fraudulent claims:

> In determining the requisites and meaning of "a note or memorandum in writing," courts often look to the origin and fundamental purpose of the Statute of Frauds. In fact, a failure to do so will often result in a futile preoccupation with the numerous and conflicting precepts and decisions involving the clauses providing for a note or memorandum, and a corresponding failure to see the forest for the trees.
>
> The Statute of Frauds was not enacted to afford persons a means of evading just obligations; nor was it intended to supply a cloak of immunity to hedging litigants lacking integrity; nor was it adopted to enable defendants to interpose the Statute as a bar to a contract fairly, and admittedly, made. In brief, the Statute "was intended to guard against the perils of perjury and error in the spoken word." Therefore, if after a consideration of the surrounding circumstances, the pertinent facts and all the evidence in a particular case, the court concludes that enforcement of the agreement will not subject the defendant to fraudulent claims, the purpose of the Statute will best be served by holding the note or memorandum sufficient even though it is ambiguous or incomplete.

WILLISTON ON CONTRACTS, *supra*, § 29:4 at 437–38 (footnotes omitted).

■ The statute's purpose of preventing fraud is not offended by permitting a document that sets forth all terms of an agreement to serve as the writing required by C.J. § 5–901(3), even if the document was signed before the technical formation of a contract. As the author stated in CORBIN ON CONTRACTS, *supra*, § 22.8 at 739–40:

> [E]ven though the writing was signed before any contract came into existence . . . it goes so far toward eliminating the

danger of successful fraud against [the defendant] that the courts are fully justified in holding it to be a sufficient memorandum.

In the present case, the jury specifically found that Towing Corp. and Supply Co. entered into a contract "by adopting the terms of the May, 1989 written agreement." That factual finding was amply supported by the uncontradicted testimony of Mr. Krause. For two years, the parties conducted business in accordance with the terms of the May 12, 1989, memorandum of agreement, with no apparent disputes or misunderstandings. Under such circumstances, the trial court was well justified in concluding that the document signed by Supply Co.'s president on May 12, 1989, is a sufficient memorandum of the parties' agreement to enforce the alleged oral contract. Accordingly, we find no error in the trial court's refusal to grant the defendant's motion for judgment notwithstanding the verdict.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**